IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVONTE NICHOLSON, | ) | Case No. 3:20-cv-2545 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DONALD R. MORGAN, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

On September 9, 2016, George David Smith stopped at a 7-Eleven to pick up pizzas for his son's birthday party. Unbeknownst to Smith, a 7-Eleven clerk recognized him as someone her drug dealer, Alexander Williams, was looking for and reported Smith's whereabouts to Williams. Just when Smith was about to leave the 7-Eleven, a car pulled up behind him. Two men got out: Damarcus Lawhorn and Davonte Nicholson, the latter of whom walked to Smith's window and shot and killed Nicholson. Following a jury trial at which Nicholson and Williams were tried together, Nicholson was found guilty of murder and sentenced to serve 18 years to life in prison.

Nicholson, pro se, now petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, raising one claim of ineffective assistance of appellate counsel. ECF Doc. 1. Nicholson's Ground One claim asserts that appellate counsel was ineffective for not arguing that trial counsel was ineffective for not moving to sever Nicholson's trial from that of Williams. ECF Doc. 1 at 5; ECF Doc. 1-1 at 18-21.

Respondent, Warden Bill Cool,[1] filed a return of writ, arguing that: (i) Nicholson's § 2254 petition was time-barred under the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations; and (ii) Nicholson's claim(s) were otherwise meritless.  ECF Doc. 7.[2]  Nicholson filed a traverse, to which the warden filed a response.  ECF Doc. 9; ECF Doc. 11.

Because Nicholson's § 2254 petition is untimely and his claim is otherwise procedurally defaulted and/or meritless, I recommend that Nicholson's claim be DISMISSED and that his petition for a writ of habeas corpus be DENIED.  I further recommend that Nicholson not be granted a certificate of appealability.

## I.      State Court History

On September 30, 2016, a Lucas County, Ohio, grand jury issued an indictment that charged Nicholson with one count of aggravated murder (Count One) and one count of murder (Count Two).  ECF Doc. 7-1 at 4–6.  Lawhorn and Williams were named as codefendants on both charges.  *Id.*  Lawhorn pleaded guilty to lesser-included offenses of involuntary manslaughter and felonious assault.  ECF Doc. 7-1 at 8–9.  Nicholson and Williams pleaded not guilty.  Docket for Lucas Cnty. Ct. Comm. Pleas, Case No. G-4801-CR-201602818-000 ("Trial Docket"), docket entries dated 2/14/2017 and 4/11/2017.[3]

---

[1] The current warden at Nicholson's place of confinement is Bill Cool.  *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004) (stating that the proper respondent in a habeas action "is the warden of the facility where the [petitioner] is being held").

[2] Warden Cool reads Nicholson's petition as raising four discrete claims.  ECF Doc. 7 at 8–9.  Nicholson, however, maintains that his petition raises a single claim for relief based on ineffective assistance of appellate counsel.  ECF Doc. 9 at 16.  I will address Nicholson's petition as having raised a single claim. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004).

[3] Federal courts may take judicial notice of a state court's publicly available online docket.

On April 24, 2017, Nicholson's case went to trial.[4]  ECF Doc. 7-1 at 14.  The trial court declared a mistrial after the jury was unable to reach a unanimous verdict.  ECF Doc. 7-1 at 14; *see* Trial Docket, docket entry dated 4/28/2017.  The court also denied Nicholson's post-trial motion for judgment of acquittal.  ECF Doc. 7-1 at 10–15.

On June 19, 2017, Nicholson and Williams were tried jointly.  Trial Docket, docket entry dated 6/19/2019.  The evidence presented at trial established the following relevant facts.  On September 9, 2016, Smith, Alliyah Thompson, and six children stopped to pick up pizza at a 7-Eleven while on their way to a birthday party for Smith's son.  ECF Doc. 7-2 at 225–26.  When Thompson returned to the car with the pizzas, Smith saw in the rear-view mirror several men he recognized as enemies.  ECF Doc. 7-2 at 228.  One of the men, who Thompson recognized as Lawhorn, walked to the front of the car and antagonized Smith.  ECF Doc. 7-2 at 228–29.  Meanwhile, another, taller individual approached Smith and asked him at gunpoint, "Where is my shit at now…?", after which the man shot and killed Smith.  ECF Doc. 7-2 at 228–29, 644–45, 647.  Security cameras at the 7-Eleven captured the shooting and events which occurred inside the 7-Eleven.  ECF Doc. 7-2 at 193–94, 198.

Jacquelen Garza, a 7-Eleven clerk, testified that after Thompson placed her order for pizzas, Garza looked through a window and saw Smith.  ECF Doc. 7-2 at 268.  Garza recognized Smith from a conversation she'd had with Williams (her drug dealer).  ECF Doc. 7-2 at 285, 312.  In that conversation, Williams told Garza that he had been robbed, showed Garza a photo of the robber on his phone, and stated that he was going to kill the robber.  ECF Doc. 7-2 at 286.  The photo that Williams shared with Garza was of Smith.  *Id.*

---

[4] Warden Cool did not include the transcript of Nicholson's first trial in the state court record filed in this matter.  ECF Doc. 7 at 37 (stating that the warden did not file the transcript because he did not think it was relevant).  The transcript is not otherwise publicly available.  *See* Trial Docket.

Garza testified that when she saw Smith at the 7-Eleven, she called Williams to let him know Smith was there and what vehicle Smith was driving. ECF Doc. 7-2 at 268, 281.  After Garza handed the pizzas over to Thompson, Garza got a call from Williams telling her that he was coming up the street and asking if Smith was still there. ECF Doc. 7-2 at 268, 282–83. Garza responded that Thompson had just walked out, after which Garza saw Williams pull into the 7-Eleven with Lawhorn and Nicholson. ECF Doc. 7-2 at 268, 271, 283.  Garza then witnessed Nicholson walk to the driver-side door and shoot Smith. ECF Doc. 7-2 at 272–73. She also identified Nicholson as the shooter during a photo line-up and when she was presented with the security camera footage. ECF Doc. 7-2 at 283, 289, 291–92.

Before the Garza testified, the trial court addressed the admissibility of the conversation between Garza and Williams which led Garza to identify Smith on September 9, 2016. ECF Doc. 7-2 at 13.  The court indicated that it had excluded Garza's testimony on that issue at Nicholson's first trial but would allow the testimony to be admitted on retrial pursuant to Ohio Evid. R. 801(D)(2)(e). ECF Doc. 7-2 at 14.  The court stated that Williams's statements to Garza were admissible once it was established that Nicholson participated in the plan to kill Smith. Id. The court found that Nicholson's comment to Smith just before he shot Smith, "where is my shit now," referred to the robbery mentioned by Williams, such that Nicholson was Williams's co-conspirator. ECF Doc. 7-2 at 14–15.

Lawhorn testified that he and Williams had been robbed the summer before the 7-Eleven incident by, among others, Smith. ECF Doc. 7-2 at 404–07.  On September 9, 2016, Lawhorn picked up Nicholson and Williams while on his way to do errands in his girlfriend's car. ECF Doc. 7-2 at 408-04.  After the errands, Williams got a call from Garza indicating that one of the robbers from the previous summer was at 7-Eleven. ECF Doc. 7-2 at 417–18.  Lawhorn then

4

raced to the 7-Eleven, pulled up behind Smith's car, walked to the front of Smith's car, and confronted Smith. ECF Doc. 7-2 at 418–21, 478. Meanwhile, Nicholson walked to the driver-side window and shot Smith. ECF Doc. 7-2 at 422–23.

Lawhorn testified that the next day he met up with Nicholson and Williams and told them he wanted to destroy the car used in the offense. ECF Doc. 7-2 at 425–26. Lawhorn poured gas on the interior of the car, which Nicholson ignited with a piece of paper he set on fire. ECF Doc. 7-2 at 427–28. The trio then departed on a pre-arranged trip to Biloxi, Mississippi. ECF Doc. 7-2 at 430–32, 434. When they returned to Ohio, Lawhorn turned himself in. ECF Doc. 7-2 at 436. Lawhorn later identified Nicholson during a phot line-up. ECF Doc. 7-2 at 440–41. He also identified Nicholson as the shooter when presented with the security camera footage. ECF Doc. 7-2 at 444–45, 447, 449.

LaWanda Bennett, Lawhorn's girlfriend, testified that on September 9, 2016 she saw Lawhorn, Nicholson, and Williams leave with her car. ECF Doc. 7-2 at 362, 375, 379–80. When presented with still images of the security camera footage, Bennett confirmed that the car that pulled up behind Smith was hers. ECF Doc. 7-2 at 382–83, 389–90. She also identified Lawhorn and Williams. ECF Doc. 7-2 at 388, 390–93.

The state also presented Williams's recorded phone call from jail. ECF Doc. 7-2 at 630–31. According to the state's closing argument, William could be heard say that he went to Mississippi with "them." ECF Doc. 7-2 at 729.[5] And the state presented a burnt receipt with Nicholson's name, which was found outside of Bennett's burnt car. *See* ECF Doc. 7-2 at 350, 716, 727.

---

[5] The jailhouse phone call was not transcribed. ECF Doc. 7-2 at 633.

Nicholson testified that on September 9, 2016 he encountered Lawhorn while walking his dogs, talked, and went about their separate ways. ECF Doc. 7-2 at 690–93. They saw each other again the next day, when Lawhorn, Nicholson, and Williams traveled together to Mississippi. ECF Doc. 7-2 at 694–95. Nicholson did not know at the time that Lawhorn had been robbed. ECF Doc. 7-2 at 693. And Nicholson did not find out about the shooting until two days after it occurred. ECF Doc. 7-2 at 695–96.

The jury found Nicholson not guilty of the original aggravated murder charge in Count One but guilty of the lesser-included offense of murder and guilty of the attached firearm specification. ECF Doc. 7-1 at 17–18. The trial court then ordered Nicholson to serve an aggregate sentence of 18 years to life in prison.[6] ECF Doc. 7-1 at 19–20. The journal entry imposing Nicholson's conviction was entered on June 26, 2017. ECF Doc. 7-1 at 19.

## II.    Direct Appeal

On July 21, 2017, Nicholson, through new counsel, appealed his conviction. ECF Doc. 7-1 at 21. Nicholson filed a merits brief, asserting one assignment of error: "Did the jury err when it found Mr. Nicholson guilty because the evidence was insufficient to support the finding and the finding not sustained by the manifest weight of the evidence?" ECF Doc. 7-1 at 27–37. The state filed an appellee brief. ECF Doc. 7-1 at 38–54. On December 7, 2018, the Ohio Court of Appeals overruled Nicholson's assignment of error and affirmed his conviction. ECF Doc. 7-1 at 56–61; see also State v. Nicholson, 2018-Ohio-4909 (Ohio Ct. App. 2018).

On January 11, 2019, Nicholson filed a pro se notice of appeal to the Ohio Supreme Court. ECF Doc. 7-1 at 64–65. Nicholson's memorandum in support of jurisdiction reiterated

---

[6] Though not a model of clarity, it is evident that the court imposed a mandatory term of 15 years to life imprisonment on the murder charge consecutive to a mandatory consecutive term of three years on a firearm specification attached to Count One.

his assignment of error from his Ohio Court of Appeals brief as a proposition of law.  ECF Doc.
7-1 at 67–75.  On March 6, 2019, the Ohio Supreme Court declined to accept jurisdiction.  ECF
Doc. 7-1 at 87.

### III.    Ohio App. R. 26(B) Application to Reopen

On March 8, 2019, Nicholson filed an Ohio App. R. 26(B) application to reopen his
direct appeal.  ECF Doc. 7-1 at 88–97.  Nicholson sought to reopen his direct appeal to assert
one claim that was not raised due to claimed ineffective assistance of appellate counsel:

> [T]rial counsel was … ineffective for failing to request a severance of Nicholson's
> trial from co-defendant Alexander Williams' trial which resulted in a Bruton
> violation and the admission of evidence deemed inadmissible in Nicholson's first
> trial violating Nicholson's right to a fair trial under the Fifth, Sixth, and
> Fourteenth Amendments to the United States Constitutions, and Article One,
> Section 10 of the Ohio State Constitution.

ECF Doc. 7-1 at 90.  In support, Nicholson argued that he was prejudice by trial counsel's failure
to move for a severance because being tried together with Williams allowed: (i) Garza to testify
to her conversation with Williams regarding the summertime robbery; and (ii) the state to present
Williams's jailhouse phone call, which incriminated Nicholson.  ECF Doc. 7-1 at 92–94.
Nicholson argued that, had he been tried alone, there would have been no evidence to connect
him to the summertime robbery or to the September 9, 2016 shooting.  Id.

With respect to Williams's jailhouse phone calls, Nicholson argued that Williams
referenced Nicholson by name as someone involved in the case.  ECF Doc. 7-1 at 94.  Nicholson
argued that the admission of Williams's recorded statement constituted a violation of Bruton v.
United States, 391 U.S. 123 (1968).  ECF Doc. 7-1 at 94–95.  Nicholson further argued that trial
counsel should have at least objected to the admission of Williams's recorded reference to
Nicholson.  ECF Doc. 7-1 at 95.  Because of counsel's omission, Nicholson argued that the state
was allowed to argue that Williams's use of the word "them" referred to Nicholson, and the jury

7

could have inferred Nicholson's involvement from Williams's admission to his own involvement in the offense. ECF Doc. 7-1 at 96.

On March 25, 2019, the Ohio Court of Appeals denied Nicholson's Rule 26(B) application to reopen. ECF Doc. 7-1 at 114–17. The court reasoned:

> In support of this matter, [Nicholson] disputes trial counsel's tactical determination not to seek a severance of [Nicholson's] trial from that of a co-defendant accomplice to the subject murder. [Nicholson] subjectively concludes in his affidavit filed in support of the motion, "The assignment of error as raised in the accompanying application was stronger than the claim raised by appellate counsel." [Nicholson's] position is speculative and subjective.
>
> We find that there is no objective or compelling evidence establishing a different outcome but for the perceived errors of counsel. On the contrary, the record establishes no prejudicial impropriety in this matter. [Nicholson's] subjective perceptions and conclusions do not constitute the requisite objective and compelling legal evidence establishing a different outcome but for the errors of counsel.

ECF Doc. 7-1 at 116–17.

Nicholson did not appeal to the Ohio Supreme Court. *See* Docket for Ohio Ct. App., 6th Dist. Ct., Case No. G-4801-CL-201701187-000.

## IV.  Statute of Limitations

Warden Cool argues that Nicholson's § 2254 petition should be dismissed as time-barred under 28 U.S.C. § 2244(d)(1)(A) because it was filed more than one year from when the Ohio Court of Appeals denied his Rule 26(B) application, which the warden argues occurred on May 11, 2020. ECF Doc. 7 at 13–15; ECF Doc. 11 at 1–2.

Nicholson argues that he is entitled to equitable tolling because he did not receive notice Ohio Court of Appeals' decision on his Rule 26(B) application until October 10, 2019, when he received a letter in response to an inquiry on the status of his appeal. ECF Doc. 1-1 at 9; ECF Doc. 9-1 (letter). Nicholson argues that, according to the letter, notice of the decision was

8

mistakenly sent to his attorney of record on direct appeal.  ECF Doc. 1-1 at 9.  Thus, Nicholson

argues that he should receive equitable tolling for the 45-day period within which he could have

appealed the Ohio Court of Appeals' order and for the 199 days during which he was unaware of

the court's decision.  ECF Doc. 1-1 at 9–10 (citing *Rains v. Warden*, No. 1:16-cv-180, 2016 U.S.

Dist. LEXIS 145521 (S.D. Ohio Oct. 20, 2016)).

Warden Cool argues that equitable tolling should not be granted because Nicholson has

not shown that he was diligent in monitoring the status of his Rule 26(B) application.  ECF Doc.

11 at 2–3.  The warden argues that Nicholson has not shown that an external factor prevented

him from filing his current petition in the months after her received notice of the Ohio Court of

Appeals' order.  ECF Doc. 11 at 3–4.  And the warden argues that Nicholson should, at most,

receive equitable tolling for the time between the Ohio Court of Appeals' order and the date of

notice, which would not include the 45-day appeal period.  ECF Doc. 11 at 4–5.

AEDPA imposes a one-year statute of limitations for those seeking a writ of habeas

corpus under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d)(1).  The one-year period begins to run from

the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

*Id.*  The one-year statute of limitations is tolled during the pendency of properly filed motions for post-conviction relief or other collateral proceedings.  28 U.S.C. § 2244(d)(2).

Because AEDPA's statute of limitations is not jurisdictional, it is also subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  If a petitioner seeks equitable tolling, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* at 649 (internal quotation marks omitted).  There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence."  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

### A.      Timeliness

Nicholson's § 2254 petition is untimely under § 2244(d)(1)(A), but not under Warden Cool's calculation of when the one-year period was triggered.  Contrary to the warden's argument, the Ohio Court of Appeals' denial of Nicholson's Rule 26(B) application is not the date from which we calculate the one-year statute of limitations in § 2244(d)(1)(A).  Binding precedent makes clear that Rule 26(B) applications based on claims of ineffective assistance of counsel (like Nicholson's) are *not* part of Ohio's direct-review process unless the appeal is actually reopened (which did not happen here).  *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009); *Lopez v. Wilson*, 426 F.3d 339, 351–52 (6th Cir. 2005) (en banc); *see also Morgan v. Eads*, 104 Ohio St.3d 142, 143 (Ohio 2004).  Thus, I calculate the one-year statute of limitations under § 2244(d)(1)(A) from the conclusion of Nicholson's direct-appeal proceedings.

Because Nicholson directly appealed his conviction to the Ohio Supreme Court, his conviction became final when the 90-day period within which he could have filed a petition for writ of certiorari in the United States Supreme Court expired.  *See Bronaugh v. Ohio*, 235 F.3d

280, 283 (6th Cir. 2000).  The Ohio Supreme Court declined to exercise jurisdiction over Nicholson's direct appeal on March 6, 2019.  ECF Doc. 7-1 at 87.  Thus, Nicholson's conviction became final on June 5, 2019.

Nicholson's Rule 26(B) application to reopen had no tolling effect because the time within which to appeal the Ohio Court of Appeals' denial of the application expired on May 9, 2019, before Nicholson's conviction became final.  ECF Doc. 7-1 at 114; *see* Ohio S. Ct. Prac. R. 7.01(A)(1).  The one-year period, therefore, ran without interruption from June 6, 2019 until it expired on June 8, 2020.  *See* Fed. R. Civ. P. 6(a)(1)(C).  Thus, Nicholson's federal habeas petition, which he delivered for mailing on November 2, 2020, is untimely.  28 U.S.C. § 2244(d)(1)(A); *Houston v. Lack*, 487 U.S. 266, 270 (1988); ECF Doc. 1 at 15.

None of the other triggering dates applies to Nicholson's § 2254 petition.  Nicholson has not asserted that a state-created impediment impeded his timely filing.  28 U.S.C. § 2244(d)(1)(B).  Nicholson has not asserted a claim based on a newly recognized, retroactively applicable constitutional right.  28 U.S.C. § 2244(d)(1)(C).  And Nicholson has not claimed that he was in anyway prevented from discovering the factual predicate underlying his sole claim for relief.  28 U.S.C. § 2244(d)(1)(D).

**B.    Equitable Tolling**

Nicholson has not established that equitable tolling is warranted.  *Holland*, 560 U.S. at 649.  Nicholson seeks equitable tolling based on his claim that he was unaware of the Ohio Court of Appeals' March 25, 2019 decision on his Rule 26(B) application until October 10, 2019.  ECF Doc. 1-1 at 9–10.  But, as Warden Cool argues, "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they passively await decision."  *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011)

(internal quotation marks omitted).  And although Nicholson stated that he inquired into the status of his appeal (which was how he became aware of the clerical error), Nicholson has not indicated when he did so or what other steps he took to remain apprised of the status of his case. Thus, Nicholson has not established that he was reasonably diligent in protecting his appellate rights.  *See Brown v. Adams*, No. 21-5817, 2022 U.S. App. LEXIS 8879, at *4 (6th Cir. Apr. 1, 2022) (unreported) (stating that a petitioner must "demonstrate reasonable diligence in protecting their appellate rights").

Moreover, Nicholson has not shown that some extraordinary circumstance prevented him from filing his § 2254 petition on or before June 8, 2020.  *Holland*, 560 U.S. 649.  Nicholson effectively argues that the Ohio Court of Appeals' failure to notify Nicholson directly of the March 25, 2019 decision and appellate counsel's similar failure to forward notice of the decision were circumstances beyond his control and for which he should not be held accountable.  *See* ECF Doc. 1-1 at 9–10; ECF Doc. 9 at 5–7.  But the focus of equitable tolling is what prevented Nicholson from timely filing his *federal habeas petition*.  *See Holland*, 560 U.S. at 649. Although the lack of notice may have deprived Nicholson of the ability to appeal the denial of his Rule 26(B) application, Nicholson has not explained in what way the lack of notice affected his ability to file his federal habeas petition before the deadline expired.  Specifically, Nicholson has not explained what impeded him from filing his petition between October 10, 2019 (when he alleges that he was put on notice) and June 8, 2020 (the one-year deadline).

Nicholson's reliance on *Rains* is also unavailing.  *Rains* is a district court determination and is, therefore, not binding on this court.  *Liebisch v. Sec'y of Health & Hum. Servs.*, No. 93-3122, 1994 U.S. App. LEXIS 6904, at *6 (6th Cir. Mar. 30, 1994) (unreported).  More importantly, courts determine whether equitable tolling is warranted on a case-by-case basis.

*Holland*, 560 U.S. at 649-50.  And there are important factual differences between *Rains* and Nicholson's case that counsel against its limited[7] application to Nicholson's case.  Notably, the petitioner in *Rains* sought equitable tolling to account for: (i) his lack of notice of the trial court's denial of his motion to withdraw, which impeded his ability to timely appeal that decision; and (ii) his mental incompetence, which resulted in a six-month delay from the Ohio Court of Appeals' decision and his appeal to the Ohio Supreme Court.  No. 1:16-cv-180, 2016 U.S. Dist. LEXIS 145521, at *5–6.  Furthermore, Rain acted with greater diligence than Nicholson in pursuing his appellate rights, such as by filing a petition for writ of mandamus to compel a ruling on the motion to withdraw after he believed it to be pending for two months and filing a motion for a delayed appeal within two months of becoming aware of that the motion had already been denied.  *Id.*  Thus, Nicholson has not established a basis for equitable tolling.

### C.    Actual Innocence

Nicholson also has not established that he can overcome his untimeliness under the actual-innocence exception.  *McQuiggin*, 569 U.S. at 386.  Nicholson's sole ground for relief is not premised on a claim of actual innocence.  And Nicholson has not submitted with his § 2254 petition or with his traverse new, reliable evidence showing that he is factually innocent of his murder conviction.  *Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir. 2005).

---

[7] *Rains* did not grant equitable tolling; rather, the court proceeded to the merits because an evidentiary appeared to be necessary to more fully develop the record on the issue of equitable tolling.  No. 1:16-cv-180, 2016 U.S. Dist. LEXIS 145521, at *22–27.

13

### D.      Timeliness Summary

Because Nicholson's § 2254 petition is untimely and he has not established grounds for
equitable tolling or a gateway actual-innocence claim, I recommend that Nicholson's petition be
DISMISSED as untimely.

## V.      Alternative Analysis

Even if Nicholson's § 2254 petition was not barred by AEDPA's statute of limitations, I
would find that his claim for relief is meritless.

In his sole claim for relief, Nicholson reasserts his argument that appellate counsel was
ineffective for not raising an ineffective-assistance-of-trial-counsel claim based on trial counsel's
failure to move to sever Nicholson's and Williams's trials. ECF Doc. 1-1 at 5; ECF Doc. 1-1 at
18–20. Nicholson likewise reiterates that prejudice resulted from trial counsel's failure because
it allowed the admission of Garza's conversation with Williams and Williams's recorded
statement implicating Nicholson. ECF Doc. 1-1 at 19–20. Nicholson also argues that the Ohio
Court of Appeals applied the wrong standard in reviewing his Rule 26(B) application when it
reviewed his claim to determine whether the outcome of trial would have been different, and not
whether the outcome of direct appeal would have been different. ECF Doc. 1-1 at 20–21.

Warden Cool reads Nicholson's Ground One claim as raising four distinct claims:
(i) appellate counsel was ineffective for not raising trial counsel's failure to seek a severance,
which the warden argues is procedurally defaulted because it was not appealed to the Ohio
Supreme Court; (ii) the trial court erred in admitting Garza's testimony of her conversation with
Williams, which the warden argues is noncognizable; (iii) the admission of Williams's phone
records constituted a *Bruton* violation, which the warden argues is procedurally defaulted
because it was never raised in the Ohio courts; and (iv) a remand is warranted for the Ohio Court

of Appeals to review his claim under the correct standard, which the warden argues is procedurally defaulted and noncognizable.  ECF Doc. 7 at 9, 18–32.  And to the extent sufficiency of the evidence is at issue, the warden argues the Ohio Court of Appeals reasonably determined there was sufficient evidence from which a rational trier of fact could have found Nicholson guilty.  ECF Doc. 7 at 32–37.

In his traverse, Nicholson argues that his § 2254 petition raises but one single claim: "The issue is one claim that appellate counsel was ineffective for failing to raise that trial counsel was ineffective for failing to file a motion to sever Nicholson's trials from his co-defendant Alexander Williams."  ECF Doc. 9 at 16.  Nicholson argues that he can overcome his procedural default because the lack of notice of the Ohio Court of Appeals' decision constitutes cause, and the resulting inability to appeal to the Ohio Supreme Court established prejudice.  ECF Doc. 9 at 9–12.

### A.    Construction

The differing perspectives on the number of claims raised in Nicholson's § 2254 petition requires clarification.  Nicholson insists that his petition merely reasserts the single claim he raised in his Rule 26(B) application to reopen.  ECF Doc. 1 at 5–6; ECF Doc. 1-1 at 18; ECF Doc. 9 at 16.  The only kind of claim that can be raised in a Rule 26(B) application is a claim of ineffective assistance of appellate counsel.  *State v. Davis*, 119 Ohio St.3d 422, 425 (Ohio 2008). Thus, I do not read Nicholson's petition as raising discrete challenges to the trial court's admission of evidence or the Ohio Court of Appeals' handling of Nicholson's Rule 26(B) application.

I instead read Nicholson's arguments pertaining to Garza's testimony and Williams's recorded statements as reasons for why he contends he was prejudiced by trial counsel's

deficient performance (not moving for a severance).  *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Liberal construction does not require a court to conjure allegations on a litigant's behalf.").  I also do not read Nicholson's challenge to the standard of review applied by the Ohio Court of Appeals in reviewing his claim of ineffective assistance of counsel as raising a separate claim for relief.  Whether that court applied the correct standard in reviewing the merits of a constitutional claim is relevant to whether this court must afford that decision deference under AEDPA.  *See* 28 U.S.C. § 2254(d).

### B.    Procedural Default

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his claim in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  Thus, we will not consider claims which: (i) were not fairly presented to the state courts and cannot be presented to them now; (ii) and claims which the state court rejected on the basis of an adequate and independent state procedural ground.  *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).  But when the issue of procedural default raises more questions than the merits, we may proceed straight to the merits.  *See, e.g.*, *Watkins v. Lafler*, 517 F. App'x 488, 498 (6th Cir. 2013); *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003).

Although Nicholson's Ground One claim implicates the procedural default doctrine, it is simpler to resolve Nicholson's claims on the merits.  Nicholson's sole claim for relief was raised in his Rule 26(B) application to reopen.  Because he did not appeal the denial his Rule 26(B) application to the Ohio Supreme Court and Ohio law does not allow for delayed appeals from the denial of Rule 26(B) applications, his Ground One claim is procedurally defaulted.  Ohio S. Ct.

Prac. R. 7.01(A)(4)(c); *see Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (requiring that claims be raised at every stage of state review).

To overcome his procedural default, Nicholson would have to show cause and prejudice.[8] *Coleman*, 501 U.S. at 750.  Nicholson could arguably establish cause to excuse his procedural default because notice of the March 25, 2019 order denying his Rule 26(B) application to reopen was not mailed to him directly and he did not receive notice of the decision until long after the 45-day window within which to appeal to the Ohio Supreme Court.  Ohio S. Ct. Prac. R. 7.01(A)(1).  The warden has not disputed this basis for establishing cause.  ECF Doc. 11 at 7. Thus, rather than analyze prejudice, I find it more appropriate to proceed to the merits.  *Cf. Brown v. Miller*, No. 4:16 CV 600, 2017 U.S. Dist. LEXIS 222055, at *32 (N.D. Ohio Oct. 30, 2017) (doing the same), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 17855 (N.D. Ohio Oct. 17, 2018).

C.    **Merits**

Because the Ohio Court of Appeals adjudicated Nicholson's Ground One claim on the merits, AEDPA permits a federal court to grant relief only if that decision: (i) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (ii) was based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d).  "Unreasonable" doesn't simply mean that the state court got it wrong.  *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022).  Only if no "fairminded jurist" could agree with the state court may we grant relief. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

---

[8] The fundamental-miscarriage-of-justice (actual innocence) exception is not implicated by Nicholson's Ground One claim.

17

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, under which the petitioner must show that (1) counsel behaved unreasonably; and (2) counsel's unreasonable performance prejudiced the defense.  466 U.S. 668, 687 (1984).  In the context of an appeal, the prejudice prong requires that the petitioner show that, but-for counsel's deficient performance, he would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004).

The Ohio Court of Appeals' denial of Nicholson's Ground One claim was not contrary to *Strickland*.  28 U.S.C. § 2554(d)(1).  The court explicitly cited and applied the *Strickland* deficiency and prejudice standard.  ECF Doc. 7 at 116.  And the court did not, as Nicholson argues, apply the wrong test for prejudice.  The issue before the Ohio Court of Appeals was whether appellate counsel was ineffective for not raising a claim of ineffective assistance of trial counsel.  An analysis into a claim of ineffective assistance of appellate counsel necessarily involves an evaluation of the merits of the underlying claim.  *Mapes*, 388 F.3d at 194.  In Nicholson's case, the underlying claim was whether trial counsel was ineffective for not moving to sever Nicholson's trial from that of Williams, the prejudice analysis of which would have required Nicholson to show that the outcome *at trial* would have been different had the trials been severed.  *Strickland*, 466 U.S. at 687, 694; *see also State v. Hensley*, 2010-Ohio-3822, ¶39 (Ohio Ct. App. 2010).  Thus, in order for the Ohio Court of Appeals to determine whether a different outcome on appeal would have resulted had the issue of trial counsel's failure to move for a severance been presented, it necessarily had to determine whether Nicholson was prejudiced at trial by the failure to seek severance of trials.  The Ohio Court of Appeals' denial of Nicholson's Ground One claim was, therefore, not contrary to *Strickland*.

The Ohio Court of Appeals did not elaborate on its reasons for concluding that no prejudice resulted from trial counsel's failure to seek a severance.  ECF Doc. 7-1 at 116–17. Nevertheless, AEDPA deference still applies.  *Harrington*, 562 U.S. at 99.  The burden is on Nicholson to show that "there was no reasonable basis for the state court to deny relief."  *Id.* at 98.  He has not met his burden.

Fair-minded jurists could disagree on the correctness of the Ohio Court of Appeals' rejection of Nicholson's Ground One claim.  *See Harrington*, 562 U.S. at 102–03.  The thrust of Nicholson's prejudice argument was that, had he and Williams been tried separately: (i) Garza would not have testified that Williams was looking for Smith to retaliate against him for Smith's role in a prior robbery; and (ii) the state would not have presented Williams's recorded statements incriminating Nicholson.  *See* ECF Doc. 7-1 at 92–97.  One reasonably could conclude that, even had that evidence not been presented, there was more than sufficient evidence from which a jury could have found Nicholson guilty of Smith's murder.  Such evidenced included: (i) camera footage of the shooting (ECF Doc. 7-2 at 193–94, 198); (ii) Garza's testimony identifying Nicholson as the shooter (ECF Doc. 7-2 at 272–73, 283, 289, 291–92); (iii) Lawhorn's testimony of his and Nicholson's role in the offense (ECF Doc. 7-2 at 413, 422–23); (iv) Lawhorn's testimony identifying Nicholson as the shooter (ECF Doc. 7-2 at 444–47); (v) Bennett's corroborative testimony that Nicholson was in her car with Lawhorn and Williams before the shooting; (vi) the burnt receipt with Nicholson's name near where Lawhorn testified the trio abandoned Bennett's car, which Nicholson ignited (ECF Doc. 7-2 at 350, 427–28, 716, 727); and (vii) Thompson's testimony that she heard the shooter say, "Where is my shit now…?", before he shot Smith (ECF Doc. 7-2 at 228–29).  Ohio Rev. Code §§ 2903.02(B), 2903.11(A).

Fair-minded jurists could also disagree on the correctness of the Ohio Court of Appeals' rejection of Nicholson's argument that a *Bruton* violation occurred as a result of Williams's recorded statements being admitted into evidence.  *See Harrington*, 562 U.S. at 102–03.  In *Bruton*, the Supreme Court held that a defendant's Sixth Amendment confrontation right is violated when a non-testifying codefendant's extra-judicial statements incriminating the defendant are admitted into evidence.  391 U.S. at 135–36.  If all references in the incriminating statement to defendant's existence have been eliminated and the trial court gives a proper limiting instruction, then no *Bruton* violation occurs because the statement only becomes incriminating when linked with other evidence.  *Richardson v. Marsh*, 481 U.S. 200, 208–09, 2011 (1987); *see also Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001).  Without the actual recording of Williams's statement or a transcript of the jury instructions, the court has no way to review whether a *Bruton* violation actually occurred at Nicholson's trial.

Nevertheless, the Ohio Court of Appeals could reasonably have concluded that any *Burton* violation was harmless.  A *Bruton* violation can be harmless if it did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Stanford*, 266 F.3d at 456 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  One reasonably could conclude from the evidence discussed above that there was overwhelming evidence of Nicholson's involvement in the offense, such that Williams's statement that Williams went down to Mississippi with Nicholson did not result in actual prejudice to Nicholson.  And Nicholson himself testified that he went to Mississippi with Williams.  ECF Doc. 7-2 at 694–95.  Therefore, the state court's conclusion that Nicholson suffered no prejudice on account of appellate counsel's failure to raise a claim of ineffective assistance of trial counsel based on trial counsel's

20

failure to move for a severance was not so lacking in justification that it was beyond any possibility of fair-minded disagreement. *Harrington*, 562 U.S. at 102–03.

Thus, Nicholson's Ground One claim would fail on the merits even if his petition were not untimely.

## VI.    Certificate of Appealability[9]

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

If the Court accepts my recommendations, Nicholson will not be able to show that the Court's rulings on his claim is debatable among jurists of reason. Nicholson's § 2254 petition is untimely, and his sole claim for relief is otherwise meritless. Because jurists of reason would not find these conclusions to be debatable, I recommend that no COA issue in this case.

---

[9] In light of the requirement that the Court either grant or deny a certificate of appealability at the time of its adverse order, a recommendation regarding the certificate of appealability is included. Rule 11(a), 28 U.S.C. foll. § 2254.

## VII.    Recommendation

Because Nicholson's § 2254 petition is untimely and his claim is otherwise meritless, I

recommend that Nicholson's claim be DISMISSED and his petition for a writ of habeas corpus

be DENIED.  I further recommend that Nicholson not be granted a COA.


Dated: August 11, 2022

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may
serve and file specific written objections to the proposed findings and recommendations of the
magistrate judge.  Rule 72(b)(2), Federal Rules  Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1);
Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned
district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the
right to raise the issue on appeal either to the district judge or in a subsequent appeal to the
United States Court of Appeals, depending on how or whether the party responds to the report
and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be
specific and not merely indicate a general objection to the entirety of the report and
recommendation; "a general objection has the same effect as would a failure to object." *Howard
v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus
on specific concerns and not merely restate the arguments in briefs submitted to the magistrate
judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge
without specific objections 'wastes judicial resources rather than saving them, and runs contrary
to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist.
LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific
objections may in rare cases be excused in the interest of justice.  *See United States v.
Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).